No. 22-1652

# In the United States Court of Appeals for the Third Circuit

JAMIE DOE (Claimant #2)

*Petitioner*

v.

SECURITIES AND EXCHANGE COMMISSION

*Respondent*

ON PETITION FOR REVIEW OF AN ORDER OF THE SECURITIES AND EXCHANGE COMMISSION

**REDACTED PETITIONER'S OPENING BRIEF**

Ingrid D. Johnson
**PIERRO, CONNOR & STRAUSS LLC**
260 Madison Ave., 16th Floor
New York, NY 10016
(212) 661-2480
ijohnson@pierrolaw.com

Times Wang[*]
**NORTH RIVER LAW PLLC**
1300 I Street NW, Suite 400E
Washington, DC 20005
(202) 838-6489
twang@northriverlaw.com

David Slarskey[*]
Evan Fried[*]
**SLARSKEY LLC**
420 Lexington Ave., Suite 2525
New York, NY 10170
(212) 658-0661
dslarskey@slarskey.com
efried@slarskey.com

[*] Not admitted to this Court; appearing of counsel and on the brief.

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ..................................................................1

STATEMENT OF ISSUES ...........................................................................1

STATEMENT OF RELATED CASES...............................................................2

PRELIMINARY STATEMENT .....................................................................2

STATEMENT OF THE CASE........................................................................4

I.    Factual background.........................................................................4

    A.    Claimant 2 travels to ██████ to research and write ████████ ████████████████████. ...................................................4

    B.    After the SEC obtains a recovery from ████████████ ██████████████████████████████████, Claimant 2 and Claimant 1 both apply for a whistleblower award. ...................................................................................6

    C.    The Claims Review Staff preliminarily denies both applications for substantially the same reason. ...................................7

    D.    Pursuant to instructions in a letter sent by the SEC, Claimant 2 requests a meeting and the materials forming the basis for the preliminary determination, before contesting that determination...................................................................8

    E.    The SEC reverses the Preliminary Determination as to Claimant 1 but not Claimant 2, awarding Claimant 1 $14 million, and Claimant 2 nothing, despite acknowledging that Claimant 2 was a co-author of the report. ...........................................10

    F.    Claimant 2 petitions this Court for review but is denied access to Claimant 1's materials, despite the SEC having considered at least some of those materials in denying Claimant 2's application.....................................................................13

II.   Criticisms of the SEC's implementation of the whistleblower program............................................................................................14

A.    Concurrently with the proceedings below, numerous criticisms are lodged against the SEC's whistleblower program........................................................................14

B.    While this petition is pending, investigative reporting reveals that the SEC whistleblower program is dominated by insiders..................................................................15

SUMMARY OF ARGUMENT ..............................................................16

ARGUMENT ....................................................................................17

I.    Standard of review applicable to all issues....................................17

II.   The Final Order should be reversed because it is arbitrary and capricious. .................................................................................18

A.    The Final Order should be reversed because its reasoning is incoherent and internally inconsistent....................................18

B.    The Final Order should be reversed because it inexplicably concluded that Claimant 2 did not assert that they were an author or sender of the ███████ email, when they did so assert, at least implicitly. ..............................................20

III.  The SEC should be required to augment the record....................22

CONCLUSION ..................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*ANR Storage Co. v. F.E.R.C.*, 904 F.3d 1020 (D.C. Cir. 2018) ..............................18

*Chamber of Commerce of the U.S. v. D.O.L.*, 885 F.3d 360 (5th Cir. 2018) ............................................................................................19

*Checkosky v. S.E.C*, 23 F.3d 452 (D.C. Cir. 1994)........................................... 17, 18

*Earth Island Inst. v. Hogarth*, 494 F.3d 757 (9th Cir. 2007)...................................17

*Florida Power Light Co. v. Lorion*, 470 U.S. 729 (1985) .......................................17

*Guo v. Ashcroft*, 386 F.3d 556 (3d Cir. 2004) ........................................................19

*Kilgour v. S.E.C.*, 942 F.3d 113 (2d Cir. 2019) ......................................................23

*Nat'l Parks Conservation Ass'n v. E.P.A.*, 788 F.3d 1134 (9th Cir. 2015) ....................................................................................................................19

*Sierra Club v. E.P.A.*, 719 F.2d 436 (D.C. Cir. 1983)............................................19

*Sierra Club v. E.P.A.*, 884 F.3d 1185 (D.C. Cir. 2018)..........................................19

*Zhao v. D.O.J.*, 265 F.3d 83 (2d Cir. 2001) ...........................................................19

**Statutes**

15 U.S.C. § 78u-6(f)................................................................................................17

5 U.S.C. § 706(2)(A)...............................................................................................17

**Regulations**

17 C.F.R. § 240.21F-13(b).......................................................................................22

# JURISDICTIONAL STATEMENT

This Court has original jurisdiction over this petition under 15 U.S.C § 78u–6(f). In accordance with 15 U.S.C. § 78u-6(f), the Petition for Review from the SEC's March 11, 2022 Final Order was timely filed within 30 days on April 8, 2022.

# STATEMENT OF ISSUES

1.    Whether the SEC acted arbitrarily and capriciously in refusing to exercise its discretionary authority in favor of Claimant 2's application, but choosing to do so in favor of Claimant 1's, when the SEC found that both were authors of the report that caused the relevant investigation, and the SEC justified its determination based on a unproduced email from Claimant 1 that is not part of the administrative record, that the SEC admits played no role in triggering the investigation, and that the SEC may not even have possession of. Claimant 2's claim to an award was the subject of the underlying proceedings. The fact that the unproduced email was purportedly the reason for the difference in treatment between the two applications only came to light via the determination that is itself on appeal, which appeal is the sole apparent avenue for challenging that determination.[1]

---

[1] For similar reasons, Petitioner has included in the appendix certain materials not listed in the SEC's May 3, 2022 Certificate Listing and Describing the Documents and other Materials in the Record on Appeal, including materials responsive to issues first raised by the SEC in its March 11, 2022 final determination. In particular, Petitioner has included: (1) emails between Petitioner's appellate counsel and the SEC regarding the record (A162-168); (2) news articles relating to the SEC's whistleblower program (A169-187); and (3) a declaration from

2.      Whether the SEC acted arbitrarily and capriciously in failing to produce materials it considered in denying Claimant 2's application, and particularly the email that formed the main basis of its denial. This issue was raised via correspondence between Claimant 2's appellate counsel and the SEC. A163-164.

## STATEMENT OF RELATED CASES

In the wake of the SEC's determination, Claimant 2 filed a common-law action against Claimant 1. ███████████████████████████████ ████████████████████████████████████████████

## PRELIMINARY STATEMENT

In ████, Claimant 2 and Claimant 1 co-authored an investigative report concerning ████████████████████ that exposed significant fraud and self-dealing. They both ███████████████████████████████ ████████. The report was also published online and received significant media attention. Based on their work, the SEC opened an investigation, and in ████, obtained a ███████████ recovery.

---

Petitioner that includes responses to issues first raised by the SEC in its final determination (A188-190). These materials are not in the record and are being submitted subject to a concurrently filed motion to supplement the record. Citations to them will be denoted by an asterisk.

Both Claimant 2 and Claimant 1 applied for a whistleblower award, but because neither had complied with certain technical requirements, the SEC office responsible for making a preliminary determination on their claims denied them both.

The full Commission subsequently reversed, but only with respect to Claimant 1, who was represented by a former senior SEC official who had worked on the whistleblower program. In so doing, the full Commission chose to waive certain technical requirements only for Claimant 1 and to award him $14 million.

As for Claimant 2—who was not represented below, much less by a former official in the SEC whistleblower program—the Commission declined to extend him the same discretionary latitude. Instead, it strictly applied its technical requirements and awarded him *nothing*.

Worse, it did so despite "credit[ing] both as having been authors of the report[,]" A4 at n. 3, and despite acknowledging that ███████████████████ ████████████████████████████████ A9. Worse still, it did so based on reasoning that was so mystifying, incoherent, and lacking in transparency, that it raises the specter of favoritism for a former colleague.

All this was arbitrary and capricious, and this Court should reverse.

## STATEMENT OF THE CASE

### I.    Factual background.

#### A.    Claimant 2 travels to ▮▮▮ to research and write ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

In ▮▮▮, in partnership with Claimant 1, Claimant 2 traveled to ▮▮▮ to, among other things, investigate ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮. *See generally* A136-161. As part of that investigation, Claimant 2 personally conducted an extensive analysis of ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. A188.* That analysis revealed that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. A48-54.

On ▮▮▮▮▮▮▮, Claimant 2 and Claimant 1 jointly published ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ That same day, they also ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ("▮▮▮▮▮▮ email"). A188-189*; A142; A108-110.[1]



---

[1] A108-110 is an enlarged version of the email at A142.

The ███████████ email included ██████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████ A142; A108. Claimant 2 was physically with

Claimant 1 and █████████████████████████████████████████

████████████████. A189.*

     ████████████████████████████████████████████

█████████████████████. A133 ██████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████ see also A9 ("[T]he

investigation was opened based on the information in the report, which contained

analysis derived from a large number of publicly-available and non-public sources[.])

     As the SEC put it, Claimant 2's findings were "credible and of high quality

and caused Enforcement staff to open an investigation that ultimately resulted in the

successful Covered Action and returned millions of dollars to harmed investors[.]"

A8.

     Separately, ████████████████████████████ Claimant 1 purportedly

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████. Importantly, however, according to the SEC,

the ████████ email played *no causal role in the SEC's investigation*, and

Claimant 1's contact at the SEC ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████ as the SEC has refused to provide

Claimant 2 with a copy of the ████████ email, as discussed in more detail below.

**B.    After the SEC obtains a recovery from ████████████████**
**████████████████████████████████, Claimant 2**
**and Claimant 1 both apply for a whistleblower award.**

On ████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████. A111-120.

On ████████████████████████████████████████████████

████████████████████████████, triggering a 90-day deadline to apply for a

whistleblower award to be paid out of that recovery. *See* A4.

On ███████████████████████████████████████████████████.
A121-122; *see also* A4. ████████████████████████████████████
███████. A4.

### C.    The Claims Review Staff preliminarily denies both applications for substantially the same reason.

On ██████████████, the SEC office responsible for making an initial determination on such applications, the Claims Review Staff, preliminarily denied both Claimant 2's and Claimant 1's applications, for substantially the same reasons. Relying on the ████████████████████████████████████████ ██████████████████████████████, the Claims Review Staff concluded that the investigation had been opened after ██████ found the report online, and not because of information either Claimant 2 or Claimant 1 had provided the SEC, via a Form TCR, which stands for "Tip, Complaint, or Referral,"[1] or otherwise. A126-128. As such, it concluded that neither Claimant 2 nor Claimant 1 were "whistleblowers" within the meaning of Rule 21F-2(a).

---

[1] It appears Claimant 1 submitted a Form TCR in approximately ██████████████.
*See* A4 (noting that Claimant 1 submitted a Form TCR "four years" after the
████████████████ report and "two months after [the Office of the Whistleblower]
posted the Notice of Covered Action" in ████████████████).

**D.** **Pursuant to instructions in a letter sent by the SEC, Claimant 2 requests a meeting and the materials forming the basis for the preliminary determination, before contesting that determination.**

That same day, the SEC sent a letter to Claimant 2 enclosing the preliminary determination. A123-125. The letter informed Claimant 2 that "[b]efore determining whether to contest the Preliminary Determination," Claimant 2 could "request a meeting with the Office of the Whistleblower[.]" A123. It also informed Claimant 2 that they could "request that our office make available for your review the materials that formed the basis of the Preliminary Determination[.]" *Id.*



Claimant 2 was not represented by counsel during this process.

**E.    The SEC reverses the Preliminary Determination as to Claimant 1 but not Claimant 2, awarding Claimant 1 $14 million, and Claimant 2 nothing, despite acknowledging that Claimant 2 was a co-author of the report.**

On March 11, 2022, the SEC informed Claimant 2 that, although it "credit[ed] both [Claimant 2 and Claimant 1] as having been authors of the report[,] A4 at n. 3, and although it recognized Claimant 2's "role in investigating the Company and in publicly exposing the wrongdoing at the Company through writing and publishing the online report[,]" A13, they would get nothing, while Claimant 1 would receive $14 million.

The $14-million difference was, apparently, the fact that Claimant 1



after it had already been sent to                                              . A8.

Indeed, although the SEC found that Claimant 1 had failed to comply with technical requirements such as the timely submission of a Form TCR, it determined to "exercise [its] discretionary authority under Section 36(a) of the Exchange Act" in favor of Claimant 1 because doing so "would be in the public interest and consistent with the protection of investors" "in light of the unusual facts and circumstances present here," the first of which was the ▆▆▆▆▆▆ email sent by Claimant 1. A8. However, the SEC determined *not* to exercise its discretionary authority for Claimant 2 because, "[i]n contrast to Claimant 1, Claimant 2 did not

submit any information concerning the Company to the Commission at any point

prior to the settled ██████████ proceeding or even prior to ██████████

██████████ A13. ██████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████

Curiously for such a supposedly significant document, ██████████████

██████████████████████ Claimant 1's Form TCR or Form WB-

APP. A6 at n. 9. Even more perplexing, the ██████████ email apparently played

no actual role in the SEC's investigation. Indeed, according to the Final Order, ████

████████████████████████████████████████

████████████████████████████████████████

██████████████████. *Id.*

Adding to the mystery is the fact that, based on the information the SEC made

available to Claimant 2, it is not clear the SEC ████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████

11

But most baffling of all was how the Final Order analyzed the core question in any whistleblower claim: whether the claimant provided information to the SEC that led to a successful recovery. On this critical question, the SEC spoke out of both sides of its mouth.

With respect to Claimant 2, ██████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████

As for the theory, advanced by both Claimant 1 and Claimant 2, that t██████
██████████████████████████████████████, A6 at n. 10, A115, the Final Order's analysis was equally perplexing. As to Claimant 1, the SEC did not make a determination one way or another. *See* A8 (determining to "waive the TCR filing

requirements" for Claimant 1 based on four factors, none of which was the

████████████ email). As to Claimant 2, the Final Order stated that ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████ A9. But as discussed in more detail below, Claimant 2 *did* so

assert, at least implicitly.

### F. Claimant 2 petitions this Court for review but is denied access to Claimant 1's materials, despite the SEC having considered at least some of those materials in denying Claimant 2's application.

On April 8, 2022, after retaining counsel, Claimant 2 timely petitioned this

Court for review of the Final Order. A14-21. On May 3, 2022, the SEC filed a

certified list of the materials it asserted constituted the record on appeal. A22-27.

That list did not include Claimant 1's otherwise inconsequential $14-million

████████████ email, or any other materials submitted by Claimant 1. Given,

however, that the SEC explicitly considered Claimant 1's submissions in denying

Claimant 2's application, counsel for Claimant 2 asked the SEC to provide the

████████████ email and certain other of the materials submitted by Claimant 1.

A162-168.[*] The SEC refused, implausibly asserting that "documents outside the

certified list" were "not actually considered by the Commission . . . in deciding

Claimant 2's claim[.]" A162.[*]

**II.    Criticisms of the SEC's implementation of the whistleblower program.**

**A.    Concurrently with the proceedings below, numerous criticisms are lodged against the SEC's whistleblower program.**

Even as the proceedings below were taking place, signs were emerging that the SEC's whistleblower program is inordinately difficult to navigate, particularly for unrepresented laypeople like Claimant 2. For example, with respect to the process for submitting tips, the SEC's rules say that all that is required is that they be "submitted . . . in writing to the Commission"—but only if that submission occurred "before the effective date of these rules," which date is not actually set forth in the rule itself. *See* 17 C.F.R. § 240.21F-9(d). Notably, these rules were initially implemented ████████████████████████████████████████████.

After that date, the rule requires the submission of information using the Form TCR, either online or by mail or fax, or "[b]y any other such method that the Commission may expressly designate on its website that satisfies" various *other* regulations. *See* 17 C.F.R. § 240.21F-9(a)(1)-(3) (cross-referencing 17 C.F.R. §§ 240.21F-2(b) and (c)). Moreover, the rule says that the "procedures specified in paragraphs (a) and (b) of this section"—*i.e.*, the Form TCR requirement—must be followed "within 30 days of when you first provide the Commission with original information[,]" but, as of 2020, the revised rules *also* say that the Commission must waive those requirements if an unrepresented submitter "demonstrate[s] to the satisfaction of the Commission that you complied with the requirements of

paragraphs (a) and (b) of this section within 30 days of first obtaining actual or constructive notice about those requirements," or if a represented submitted does so within 30 days of obtaining representation; and if "the Commission can readily develop an administrative record that unambiguously demonstrates that you qualify for an award." 17 C.F.R. § 240.21F-9(e)(1)-(2).

Given all these permutations just for the rule setting forth the procedure for submitting information, it is no wonder that in January 2022, Judge David S. Tatel of the D.C. Circuit Court of Appeals, described one of the related implementing rules as "one of the sloppiest regulations that I have ever seen." A171.[*1]

### B.    While this petition is pending, investigative reporting reveals that the SEC whistleblower program is dominated by insiders.

Judge Tatel's criticism, however, was nothing compared to what was only recently revealed via investigative reporting. Specifically, on July 26, 2022, Bloomberg Law published an exposé entitled "SEC enriches fraudsters, lawyers as secrecy shrouds tips program." A174.[*] Among other findings, the article noted that "law firms led by or employing two former high-ranking SEC officials—one who helped write the rules, another who led the program for five years—received at least

---

[1] The case was *Jane Doe v. SEC*, 21-1097 (D.C. Cir.). A recording of the oral argument is available at https://www.cadc.uscourts.gov/recordings/recordings2021.nsf/0A563D2B4B4407F3852587DB0059E869/$file/21-1097.mp3. The relevant portion is at approximately 16:10 of the recording.

$205 million in awards for whistleblower clients." A175.* One such official was identified as "a former SEC assistant chief litigation counsel[,]" who helped his former law firm "win more money for his clients than any firm in the country, before forming his own practice in 2022." A181.* Notably, on July 28, 2022, the Wall Street Journal reported that this official was Claimant 1's counsel in the proceedings below. A186.* And, just as notably, the Bloomberg Law article cited the award below as an example of troubling irregularities, pointing out that the Commission "overruled staff and awarded about $14 million to someone who SEC lawyers ruled 'was not a whistleblower within the meaning of the statute[.]'" A178.*

## SUMMARY OF ARGUMENT

The Final Order should be reversed because its reasoning is hopelessly incoherent and internally inconsistent. In particular, the SEC credited Claimant 1 for having provided information leading to a successful recovery via the online publication of the report, while denying Claimant 2 credit for the exact same facts and conduct.

The SEC should also be reversed because it claims that Claimant 2 ███

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████

Finally, the SEC should be required to augment the record on appeal because

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

## ARGUMENT

### I. Standard of review applicable to all issues

This Court reviews the Final Order "in accordance with section 706 of [the Administrative Procedure Act]." 15 U.S.C. § 78u-6(f). Thus, it should set aside the Final Order if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law[.]" 5 U.S.C. § 706(2)(A).

An agency acts arbitrarily and capriciously "if the agency has not considered all relevant factors[.]" *Florida Power Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). It also does so if it "supports its action with an incoherent statement of reasons[.]" *Checkosky v. S.E.C*, 23 F.3d 452, 491 (D.C. Cir. 1994).

Generally, the remedy for failure to consider relevant factors "is to remand to the agency for additional investigation or explanation. *Florida Power* at 744. In "rare circumstances," however, "a court can order equitable relief or remand with specific instructions[.]" *Earth Island Inst. v. Hogarth*, 494 F.3d 757, 770 (9th Cir. 2007) (citing *Florida Power* at 744).

## II.    The Final Order should be reversed because it is arbitrary and capricious.

### A.    The Final Order should be reversed because its reasoning is incoherent and internally inconsistent.

This Court should reverse the Final Order because it is hopelessly incoherent. "[A]n agency acts arbitrarily and capriciously when . . . it . . . supports its action with an incoherent statement of reasons[.]" *Checkosky* at 491; *see also ANR Storage Co. v. F.E.R.C.*, 904 F.3d 1020, 1024 (D.C. Cir. 2018) (an agency's "reasoning cannot be internally inconsistent").

Specifically, as discussed above, the Final Order simultaneously found that Claimant 1 "provided information that led to the successful enforcement of the Covered Action by providing the Commission with original information that . . . cause[d] the staff to open its investigation," and that "the investigation was opened as a result of [Grace] discovering the report through his own Internet research." A9. That necessarily implies that Claimant 1 "provided information the led to the successful enforcement of the Covered Action" *through the online publication of the report itself*.

And yet, when it came to Claimant 2, the SEC took the diametrically opposite position: that, notwithstanding the online publication of the report, Claimant 2 never "provide[d] information 'to the Commission'" *at all*. A13.

18

There is no way to square these propositions. They are the height of arbitrary and capricious reasoning, and this Court should reverse for this reason alone. *E.g.*, *Guo v. Ashcroft*, 386 F.3d 556, 566 (3d Cir. 2004) ("What makes the Board's decision particularly suspect in this case is its failure to comport with its own prior decisions, many of which reach the opposite conclusions under similar circumstances. 'Application of agency standards in a plainly inconsistent manner across similar situations evinces such a lack of rationality as to be arbitrary and capricious.'") (quoting *Zhao v. D.O.J.*, 265 F.3d 83, 95 (2d Cir. 2001)) (cleaned up); *Sierra Club v. E.P.A.*, 884 F.3d 1185, 1195 (D.C. Cir. 2018) (reversing agency decision where the "only support for its upward-revised floors was the very data it had just dismissed as inaccurate, now cited as reliable evidence"); *Chamber of Commerce of the U.S. v. D.O.L.*, 885 F.3d 360, 382 (5th Cir. 2018) (vacating a rule in part because it contained a carve-out inconsistent with the rest of the rule that was supported only by the Department of Labor's "fiat[,]" and noting that "[i]llogic and internal inconsistency are characteristic of arbitrary and unreasonable agency action"); *Nat'l Parks Conservation Ass'n v. E.P.A.*, 788 F.3d 1134, 1145 (9th Cir. 2015) ("The seeming inconsistency in EPA's BART determinations at Colstrip Units 1 and 2 and Corette is, absent explanation, 'the hallmark of arbitrary action.'") (quoting *Sierra Club v. E.P.A.*, 719 F.2d 436, 459 (D.C. Cir. 1983)).

Indeed, the Final Order here is *doubly* incoherent given that, in another whistleblower determination currently on appeal before the D.C. Circuit, the SEC did virtually the *opposite* of what it did here, in that it treated two separate claimants as joint claimants, and awarding them each the same amount, even though the claimants did not apply as joint claimants and did not want to be treated as such. *See generally Johnston v. S.E.C.*, No. 21-1132 (D.C. Cir.).

Further, unlike with a standalone APA lawsuit challenging a regulation, for example, the agency action being reviewed by this petition does not necessarily have particularly broad policy impacts. To the contrary, it is the determination of a discrete claim, involving only two individuals. As such, Claimant 2 submits that this is one of those "rare circumstance[s]" where this Court "can order equitable relief or remand with specific instructions" to the effect that the SEC award Claimant 2 half of the existing $14 million award, instead of remanding for further proceedings.

**B.    The Final Order should be reversed because it inexplicably concluded that Claimant 2 did not assert that they were an author or sender of the ▮▮▮▮▮▮▮ email, when they did so assert, at least implicitly.**

Separately and independently, the Final Order should be reversed ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮

Indeed, the very first bullet point in Claimant 2's ████████████ ████████████████████████████████████████████████ ████████████████████████████████████████ A138. And the third bullet point was ████████████████████████████████████ ████████████████████████████████. *Id*. Meanwhile, the context of the submission was a █████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████, and therefore should be credited with providing information to the SEC.

To be sure, the SEC would have been entitled to conduct additional factfinding if it doubted that assertion. Had it done so, Claimant 2 ██████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████

Given all this, any reasonable and non-arbitrary consideration of the facts leads to the conclusion that Claimant 2 ███████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████

For this reason as well, the Court should reverse. And, for the same reasons as above, it should do so with specific instructions to award Claimant 2 half of the $14 million award.

## III.   The SEC should be required to augment the record.

At a bare minimum, the SEC be required to augment the record on appeal to comply with its own regulations. Those regulations provide that "[t]he record on appeal shall consist of the Final Order, any materials that were considered by the Commission in issuing the Final Order, and any materials that were part of the claims process[.]" 17 C.F.R. § 240.21F-13(b). That same regulation also indicates this

includes materials submitted by co-claimants that "relate directly to the claimant who is seeking judicial review." *Id.*

Here, the Final Order against Claimant 2 ███████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

The SEC's refusal to make that material part of the record on appeal is contrary to its own regulations and raises additional questions of transparency and arbitrary decision-making.

*Kilgour v. S.E.C.*, 942 F.3d 113, 123 (2d Cir. 2019) is not to the contrary. Initially, that case was not about the record on appeal, or the materials considered in issuing a final order, but materials that formed the basis of a preliminary determination. More fundamentally, unlike here, there was no indication the co-claimants' materials played nearly as meaningful a role in the challenged denial as Claimant 1's materials did here.

Indeed, the most outcome-determinative item—Claimant 1's purported ███████ email—could not even theoretically have been produced pursuant to the regulations cited in *Kilgour* because it was only raised *after* the preliminary determination here.

Nor can it be disputed that the purported ███████ email would be relevant to assessing the propriety of the Final Order. ███████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ███████

Finally, given the extreme contrast between the SEC's lack of interest in Claimant 2's submissions, ████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████ If so,

that would obviously be probative of the arbitrariness and capriciousness of the Final

Order. After all, Congress created the SEC whistleblower program to incentivize the

provision of useful original information, not the development a club for the

connected. More to the point, to the degree such increased access and opportunity

factored into the Final Order, materials reflecting such should be part of the record.

Thus, Claimant 2 requests that the Court order the SEC to augment the record

by including all materials submitted by Claimant 1 that it considered in

"contrast[ing]" Claimant 1's claim from Claimant 2's and asks the Court to

expressly require the SEC to supplement the record with the ███████ email that

Claimant 1 "maintains" they sent. Certainly, the Court should not affirm the Final

Order without first requiring that the SEC do so. Such augmentation is especially

appropriate given the concerns about the lack of transparency in the SEC's

implementation of the whistleblower program outlined above.

## CONCLUSION

For the foregoing reasons, this Court should reverse the Final Order.

Dated: August 22, 2022        Respectfully submitted,

*/s/ Ingrid D. Johnson*
Ingrid D. Johnson

25

NJ Bar 031201997 / NY Bar 4398665
**PIERRO, CONNOR & STRAUSS LLC**
260 Madison Avenue, 16th Floor
New York, NY 10016
(212) 661-2480
ijohnson@pierrolaw.com

David Slarskey[*]
Evan Fried[*]
**SLARSKEY LLC**
420 Lexington Ave., Suite 2525
New York, NY 10170
(212) 658-0661
dslarskey@slarskey.com
efried@slarskey.com

Times Wang[*]
**NORTH RIVER LAW PLLC**
1300 I Street NW, Suite 400E
Washington, DC 20005
(202) 838-6489
twang@northriverlaw.com

*Counsel for Petitioner*

---

[*] Not admitted to this Court; appearing of counsel and on the brief.

## FED. R. APP. P. 32(g) AND L.A.R. 31.1(c) CERTIFICATION

I hereby certify, pursuant to Federal Rules of Appellate Procedure 32(a)(7)(B) and (g), that the foregoing brief is proportionally spaced, has a typeface of 14 points, and contains 5,910 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

I further certify that, pursuant to L.A.R. 31.1(c) that Windows Defender Antivirus, using security intelligence version 1.373.740.0, has been run on this file and that no virus was detected.

I further certify that the text in the electronic version of the filed brief is the same as the paper copies filed with the court.

*/s/ Ingrid D. Johnson*
Ingrid D. Johnson

## L.A.R. 28.3(d) CERTIFICATION

I hereby certify, pursuant to Local Appellate Rule 28.3(d), that I am a member of the bar of this Court.

*/s/ Ingrid D. Johnson*
Ingrid D. Johnson

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 22 day of August, 2022, the foregoing Memorandum of Law and the Appendix (Vols. I & II) were filed with the Clerk of the Court by CM/EFC and to all counsel of record.

<u>*/s/ Ingrid D. Johnson*</u>
Ingrid D. Johnson