**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 22-1652
_____

JAMIE DOE (Claimant #2),
                Petitioner

v.

SECURITIES AND EXCHANGE COMMISSION
_____

On Petition for Review of an Order of
the Securities and Exchange Commission
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
February 6, 2023
_____

Before: CHAGARES, Chief Judge, SCIRICA, and RENDELL, Circuit Judges

(Opinion filed: March 23, 2023)
_____

OPINION*
_____

---

\*  This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, <u>Chief</u> <u>Judge</u>.

The United States Securities and Exchange Commission (the "SEC") reached a settlement agreement in 2015 with Focus Media (the "Company") and its Chief Executive Officer after an SEC investigation uncovered improper conduct related to certain Company transactions. "John Doe" subsequently filed an application with the SEC for a whistleblower award based on Doe's alleged contributions to the SEC investigation. The SEC denied the application. Doe now petitions us to set aside the SEC's denial of his award application. For the following reasons, we will deny his petition as well as his attendant motion to expand the record.

I.

We write solely for the parties and so recite only the facts necessary to our disposition. On September 30, 2015, the SEC filed a settled cease-and-desist proceeding against the Company and its CEO for negligently failing to disclose its partial sale of a subsidiary to insiders at favorable pricing ahead of the Company's sale of that same subsidiary to a third party at a much higher price. The Company and CEO agreed to pay more than $55 million in penalties, disgorgement, and interest as part of the settlement.

Following that settlement, Doe timely submitted a whistleblower award application claiming to be a principal author of a November 2011 report (the "Report") that examined the Company and CEO, claiming that information therein "became the cornerstone of the [SEC's] case" against the Company and its CEO. Appendix ("App.") 121-22. The Report was published by Muddy Waters Research and contained detailed information concerning the activities of the Company and its CEO, including the sale of

the subsidiary implicated in the SEC's enforcement action. In his application, under the relevant section regarding the method of his tip submission to the SEC, Doe checked the "Other" box, writing in "News Media" as the manner via which his tip was submitted to the agency.

The SEC's Claims Review Staff ("CRS") issued a preliminary determination that recommended denying Doe's award claim. A sworn declaration by an SEC investigator acknowledged the Report played a role in her investigation into the Company. The CRS concluded, however, that "[e]nforcement staff obtained the online [Report] through its own initiative from a public website[,]" as opposed to from Doe directly and, as a result, he did not qualify as a whistleblower. App. 128 n.5. Doe requested that the CRS reconsider its determination, but upon reconsideration, CRS reaffirmed its initial recommendation that his claim be denied. Doe timely contested the CRS recommendation, arguing that the Report was provided directly to the SEC via email push notifications, social media postings, and news coverage.

The SEC's final order adopted the CRS recommendation to deny Doe's award claim. It noted the role of the Report in the SEC's investigation and eventual successful settlement and credited Doe as an author of the Report. But it ultimately concluded that Doe had failed to submit the Report in accordance with the relevant whistleblower procedures and, moreover, that he had failed to provide information directly to the SEC at all. He was thus not a "whistleblower" under the relevant regulations. Regarding the emails, social media postings, and news coverage that Doe specifically had pointed to following the initial CRS recommendation, the final order explained that "[Doe] does not

assert that [Doe] was the author or sender of these emails and postings and thus [Doe] has failed to show that [Doe] provided . . . information directly to the [SEC]." App. 11 (quotation marks omitted).  Finally, the SEC considered whether to exercise discretionary authority to waive these procedural requirements and grant the award to Doe but concluded that such a waiver was unwarranted on the facts of his submission.

The SEC, however, granted whistleblower status to a different claimant ("Claimant 1") who also helped create the Report.  It granted Claimant 1's application despite CRS's preliminary recommendation that it be denied alongside Doe's.  In so doing, the SEC awarded Claimant 1 $14 million based on a percentage of the settlement achieved with the Company and its CEO.  Claimant 1's whistleblower application faced many of the same procedural roadblocks as Doe's, with the primary substantive difference being the fact that Claimant 1 purportedly emailed the Report directly to an SEC enforcement attorney a few days after the report was published online.  This email was the key justification for the SEC's granting of the award to Claimant 1 and not to Doe; it led the SEC to conclude that "it would be in the public interest" to waive the procedural requirements for Claimant 1 and grant him the award "in light of the unusual facts and circumstances here."  App. 13.  However, the final order also stated that Claimant 1's email to the SEC attorney played no role in instigating the investigation into the Company and CEO, since SEC investigators found the Report on their own.

Doe filed a petition for review of the SEC's final order.  The SEC filed the administrative record.  Doe submitted a filing suggesting the administrative record was incomplete, to which the SEC responded by claiming that the complete record had in fact

been filed. Doe, simultaneously with the filing of the opening brief, separately moved that the record be augmented to include, among other things, a declaration from petitioner, news articles, and emails between counsel. The SEC opposed the motion. Separately, Doe's merits brief also urges that the administrative record should be augmented to include more documents relating to the SEC's award determination regarding Claimant 1, particularly the email from Claimant 1 providing the Report directly to the SEC enforcement attorney.

II.[1]

A.

The SEC "shall pay an award or awards to 1 or more whistleblowers who voluntarily provided original information to the Commission that led to the successful enforcement of [a] covered judicial or administrative action." 15 U.S.C. § 78u-6(b)(1). To be eligible for an award, a whistleblower must submit information in accordance with the SEC's rules and regulations. Id. § 78u-6(a)(6), (c)(2)(D). Rule 21F-9 governs the procedures for submitting information as the basis of a claim for a whistleblower award. 17 C.F.R. § 240.21F-9; see also id. § 240.21F-2(b) (providing that eligibility for awards is conditioned in part on compliance with these procedures). It provides, in relevant part, that to be considered a whistleblower for these purposes, an individual must submit her or

---

[1] This Court has jurisdiction over this petition for review of the SEC's award denial under 15 U.S.C. § 78u-6(f). Per § 78u-6(f), we review the SEC's decisions concerning eligibility for a whistleblower award "in accordance with section 706" of the Administrative Procedure Act, which requires us to set aside an agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

his information to the SEC in a "Form TCR" (Tip, Complaint or Referral) mailed or faxed to the SEC or submitted via its online portal.  Id. § 240.21F-9(a).  Setting aside the Form TCR requirement specifically, the SEC has interpreted its rules to generally "require[] that information be 'provided' and 'submitted' directly to the Commission . . . . [The rules] make[] no allowance for the online publication of information that, by happenstance, indirectly makes its way into the hands of Commission staff."  See Exchange Act Rel. No. 82,955, 2018 WL 1516953, at *3 (Mar. 27, 2018).  The Supreme Court has, in a related context, similarly analyzed the meaning of "whistleblower" to include a direct reporting requirement.  Digit. Realty Tr., Inc. v. Somers, 138 S. Ct. 767, 777 (2018).

Doe has failed to show that the SEC acted arbitrarily or capriciously in concluding that his award application failed to meet the foregoing whistleblower criteria.  First, it is undisputed that Doe did not submit the Report to the SEC via a Form TCR.  Indeed, Doe's initial submission indicated only that the SEC learned of the Report via "News Media."  App. 121.  This alone counsels in favor of denying Doe's petition, since the relevant regulations explicitly contemplate the denial of an application if the applicant did not follow the requisite submission procedures.  Doe focuses, instead, on the other ways he allegedly provided the Report to SEC officials, such as the email blast and social media posts containing the Report that purportedly made their way to SEC investigators.  But the SEC appropriately concluded that Doe did not claim to have authored those emails and posts, since his presentation to the SEC and the examples he submitted alongside it contain no identifying information suggesting he sent those

communications.² While Doe claims that the necessary implication of his presentation was that he authored those emails and tweets, his conclusory assertions do not undermine the SEC's inference to the contrary given the lack of evidence of authorship in the record.

Doe is thus left to argue that the SEC should have waived its procedural requirements for him, an unsuccessful argument he makes only obliquely. There are two relevant waiver provisions. First, "the [SEC] may, in its sole discretion, waive any of [the whistleblower award] procedures based upon a showing of extraordinary circumstances." 17 C.F.R. § 240.21F4-8(a). Second, "the [SEC] . . . may . . . exempt any person . . . from any provision or provisions of this title or of any rule or regulation thereunder, to the extent that such exemption is necessary or appropriate in the public interest." 15 U.S.C. § 80a-6(c). The SEC concluded here that extraordinary

---

² On appeal, Doe attempts to include in the record a sworn declaration containing new factual allegations regarding his purported authorship of these emails. However, we will not consider this belated declaration because it was created after the SEC issued its final order and thus played no role in the SEC's decision. See SEC v. Chenery Corp., 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based."). While there are certain exceptions to that principle, including "when the action is adjudicatory in nature and the agency factfinding procedures are inadequate," NVE, Inc. v. Dep't of Health & Hum. Servs., 436 F.3d 182, 189 (3d Cir. 2006), this is not such a case. Doe had multiple opportunities to state his case, and to explain his role in submitting information to the SEC specifically, prior to the agency's issuing its final order. Doe's motion to expand the record will therefore be denied.

Similar logic underpins our rejection of Doe's request in his brief that the SEC be required to augment the administrative record with materials pertaining to Claimant 1's application. While the agency's final order does reference Claimant 1's email to the SEC enforcement attorney to justify its divergent award conclusions, nothing in the record suggests that the SEC relied on that email or any other Claimant 1 materials to evaluate Doe's application on its own merits. See Chenery, 318 U.S. at 87.

circumstances warranting waiver did not exist because Doe had not explained why he could not have submitted the Report directly to the SEC. Additionally, while the SEC "[did] not wish to diminish [Doe's] role in investigating the Company," it concluded that the public interest would not be served by waiver since Doe had not submitted information to the agency directly and thus had not engaged in the sort of activity that whistleblower awards were designed to encourage. App. 13.

    Doe, for his part, does not respond to or address the foregoing rationale. Instead, he focuses on the alleged incoherence of the SEC's simultaneous decision to grant a waiver for Claimant 1. But Claimant 1's award has no substantive bearing on the SEC's decision as to Doe. None of Doe's complaints about the disparate outcome resolve or eliminate the clear procedural deficiencies in his application, nor do they affirmatively explain why the SEC should have exercised its discretion to waive the procedural requirements in Doe's case. In staking his claim so heavily on the notion that he is entitled to an award because Claimant 1 received one, Doe fails to explain why he is entitled to it on the merits of his own case. Indeed, even if we were to credit Doe's assertion that he was similarly situated to Claimant 1 in all material respects, that would only suggest that the agency arguably should have denied Claimant 1 the award on the same grounds as it denied Doe's (which, in fact, is the very outcome that the CRS initially recommended in its preliminary report).[3] Doe's focus on Claimant 1 is thus

---

[3] We acknowledge that the SEC's proffered justification for awarding Claimant 1 $14 million and Doe nothing – hinging primarily on a single email that Claimant 1 sent to an SEC enforcement attorney – leaves something to be desired. The SEC has elsewhere argued that awards should only be granted where the tip itself "significantly contribute[d]

8

unavailing because it does not undermine the SEC's denial of his application on procedural grounds or its attendant decision not to grant a waiver of those procedures.

Considering the SEC's reasoned reliance on Doe's failure to follow the requisite whistleblower procedures – particularly the requirement that a whistleblower directly submit information to the SEC – alongside its thoroughly explained (and virtually unchallenged) refusal to exercise its discretion to grant a procedural waiver, the SEC did not act arbitrarily or capriciously in denying Doe's whistleblower award application.

III.

For the foregoing reasons, we will deny Doe's petition for review of the SEC's whistleblower award determination as well as his motion to expand the record.

---

to the success of the [SEC] action." Kilgour v. SEC, 942 F.3d 113, 123 (2d Cir. 2019). Yet Claimant 1's email had no ostensible impact on the investigation; SEC investigators found the Report on their own. The Court of Appeals for the Second Circuit opinion in Kilgour similarly casts some doubt on the SEC's invocation of 17 C.F.R § 240.21F-4(b)(5)'s "original source" exception as justifying Claimant 1's award here. See 942 F.3d at 125 (construing the "original source" exception to be inapplicable where the SEC had already obtained applicants' information from a different source, even though the applicants were the originators of that information). But these potential issues are beyond the scope of this appeal and, moreover, serve only to call Claimant 1's award into question while doing nothing to undermine the SEC's reasoning as to Doe.